## GUGEL'S ADM'R et al. v. ORTH'S EX'R et al.

Court of Appeals of Kentucky.
Oct. 31, 1950.

As Modified on Denial of Rehearing
Feb. 16, 1951.

Finley F. Gibson, Jr., Louisville, for appellant.

Lawrence S. Grauman, J. Leonard Walker, Louisville, for appellee.

HELM, Justice.

About 7:15 p. m., July 13, 1947, an automobile driven by Leonard L. Gugel, accompanied by his wife, Gladys Gray Gugel, was proceeding in a westerly direction on Potters Lane, Clark County, Indiana. When crossing the Pennsylvania Railroad tracks, about four miles north of Jeffersonville, the automobile was struck by a southbound passenger train. Mr. Gugel, 51, and Mrs. Gugel, 49, were fatally injured and did not leave issue surviving.

Mr. Gugel left a will devising all of his estate to his wife, and appointing her as executor without bond. Mrs. Gugel left a will devising all of her estate to her husband. On July 17, 1947, Thomas N. Gray, father-in-law of Mr. Gugel, qualified as administrator, with the will annexed, of the estate of Mr. Gugel. In the Jefferson County Court on July 23, 1947, relatives of Mr. Gugel filed motion to remove Mr. Gray as administrator on the ground that the deaths of Mr. Gugel and Mrs. Gugel were simultaneous, or that Mrs. Gugel predeceased Mr. Gugel. The Judge of the Jefferson County Court found and adjudged:

"1. That there is not sufficient evidence in this proceeding to determine that either Gladys G. Gugel or Leonard L. Gugel predeceased the other.

"2. The court finds that Leonard L. Gugel and Gladys G. Gugel died simultaneously on the point of impact with the train aforesaid on the 13th day of July 1947."

The court set aside the appointment of Gray and removed him as administrator, and appointed W. Howard Clay, public administrator and guardian of Jefferson County, as administrator, with the will annexed, of the estate of Leonard L. Gugel, and directed that he qualify immediately by executing bond with the court in the sum of $25,000.

On November 6, 1947, a statement of appeal was filed in the Jefferson Circuit Court by Thomas N. Gray, administrator, and by Thomas N. Gray and Ada A. Gray, his wife, as the only heirs at law of Gladys Gray Gugel. On November 24, 1947, a statement of appeal was also filed by relatives of Mr. Gugel. At a trial in the circuit court on February 25, 1948, the court, at the close of all the evidence, sustained appellees' motion for a directed verdict that Mr. and Mrs. Gugel died simultaneously.

Appellants appeal, urging that: (1) The court erred to the prejudice of the appellants in refusing to award them the burden of proof; (2) the court erred in sustaining exceptions to the testimony of Edwin N. Coots, coroner; and (3) the court erred in directing a verdict for appellees at the conclusion of all the evidence.

U. S. Highway No. 31 runs north and south, just west of the Pennsylvania Railroad tracks. Aurelio Liva, only eye witness to the accident, was driving north on U. S. 31. As he approached the Potters Lane crossing, an automobile was traveling west on it and another car was following fairly close behind. The first car stopped for him to drive by before coming out on the highway. He saw the train coming south and wondered "why the second car didn't see the train, * * * I was looking for him to turn off the road, or something, to stop himself to keep from getting in the path of the train, and he didn't. He drove right up on the tracks, and just as he got to the center of the tracks, just about, the train hit him, and it seemed like an explosion, and I saw Mr. Gugel's body the instant the train hit. His body knocked the side of the car out and he flew right through the air and hit the ground and bounced once and he laid still. * * * I stopped and went back and I looked at his body there and started to walk over to the car, and I went back and looked around a bit and then I noticed the head of the lady, and then I knew there must be a body somewhere, so I walked on down the track, and then is when I saw her body." He did not see Mrs. Gugel's body come out of the car.

The testimony shows that the train was traveling about 75 miles an hour, or about 110 feet a second; that it stopped about a mile beyond the point of collision. A part of the automobile was found on the front of the cow catcher, "welded" to it. The other part of the automobile—the front part—was found about 50 feet south of the crossing. The impact of the train was to the right back part, about the back door, of the automobile, a Pontiac sedan. Gugel's body was lying about 50 feet south of Potters Lane, and Mrs. Gugel's body about 100 or 150 feet south of the lane, her head being about 10 feet north of her body. Gugel's body was not bleeding; Mrs. Gugel "had blood on her." Some blood and hair were found on the end of a tie a few feet north of Mrs. Gugel's body, and her red belt was found "laying on the ties * * * outside the rail." Both her head and body were found on the same side of the right-of-way, and outside of the tracks.

Mr. Gugel sustained multiple fractures of the skull and cervical vertebrae, with marked displacement of the spinal column. He had a deep gash in the back part of his head, "brains were protruding." Both cheek bones, both jaw bones, and both collar bones were broken. He had broken ribs on the right side; his right arm and right leg were broken. Mrs. Gugel's back was broken; both arms and both legs were broken; there was a deep incision or tear across the abdomen in the region of the pelvis; her "trunk was torn loose." She was badly mangled, "her body was more badly mangled" than Mr. Gugel's. She was "fully decapitated beginning over the right ear and extending down." The physicians who testified stated that a body does not bleed after heart action ceases, but say that blood would back-flow from

the large vessels of the neck in case of decapitation. It was shown that "A person is dead at the moment heart action, respiration and action of the central nervous system jointly cease."

Edwin N. Coots, a funeral director who was serving as coroner of Clark County, Indiana, arrived at the scene sometime after the accident. His deposition was taken. He had not been trained as a physician or surgeon. The trial court sustained exceptions to answers which only medical experts could have properly given. This was not error. The court correctly sustained exceptions to which the witness stated someone else had told him about the accident.

Dr. Leo W. Zimmerman, called by appellants and asked hypothetical questions, was of the opinion that the impact caused Mr. Gugel's death, and that decapitation caused Mrs. Gugel's death. Dr. Luther Fuller, called by appellants and asked hypothetical questions, finally answered that whether or not Mrs. Gugel was dead before she was decapitated would be purely speculative. Asked, "And then an honest, sincere opinion under these circumstances as to whether she was dead after she was decapitated or whether she was dead before she was decapitated, would be purely speculative, wouldn't it?" He answered, "It certainly would."

Dr. Roy L. Carter, coroner of Jefferson County, called by appellees and asked hypothetical questions as to which of these people died first, stated that in his opinion decapitation causes immediate death; that if Mrs. Gugel was killed instantly by the impact of the collision, blood would come from the large vessels. This could account for the blood on the railroad ties, and on Mrs. Gugel's body. It was his opinion that "the impact probably killed both of them at the same time."

Under the facts and circumstances of this case it is at once apparent that, as the trial court said, "It is impossible to decide which one of these parties died first." The trial court peremptorily instructed the jury to return a verdict to this effect. Judgment was entered approving and confirming the action of the Jefferson County Court on the ground that Leonard L. Gugel and Gladys Gray Gugel died simultaneously. We believe the trial court reached the correct conclusion. We do not reach the question of burden of proof.

The judgment is affirmed.